UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEDRO ALICEA,

                              Plaintiff,

                                                                              DECISION AND ORDER

                                                                                   03-CV-6507L

                            v.

WADE HOWELL, Vocational
Supervisor, Tier III Disciplinary
Hearing Officer, NYS DOCS, Orleans
County Correctional Facility, et al.,

                              Defendants.
_____

      Plaintiff, Pedro Alicea, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights were violated in a number of respects in connection with a disciplinary proceeding against him in January and February 2003 at Orleans Correctional Facility ("Orleans"), after a urine sample provided by plaintiff tested positive for opiates. Defendants, all of whom at all relevant times were DOCS employees, have moved for summary judgment.

## FACTUAL BACKGROUND

      On January 20, 2003, pursuant to DOCS regulations, plaintiff was directed by a correctional officer to provide a urine sample for drug testing. Plaintiff alleges that after he gave the urine sample to the officer, a white powdery substance could be observed in the urine.

The urine was then tested, and came up positive for opiates. Plaintiff was issued a misbehavior report for drug use, and a Tier III disciplinary hearing was commenced on January 27. After the hearing ended on February 4, 2003, Hearing Officer Wade Howell found plaintiff guilty of using drugs, and imposed a penalty of 545 days' confinement in the Special Housing Unit ("SHU"), 36 months' loss of privileges, and a recommendation of 24 months' loss of good time.

Plaintiff filed an administrative appeal of Howell's decision, alleging various defects in the hearing procedures. Donald Selsky, the DOCS Director of Inmate Discipline and Special Housing, upheld the determination of guilt on March 19, 2003, but modified the penalty to 365 days of SHU confinement, 12 to 36 months' loss of various privileges, and a recommendation of 24 months' loss of good time.

Plaintiff, both *pro se* and through Prisoners' Legal Services of New York, requested Selsky to reconsider his determination because of alleged defects in the urinalysis procedures that had been followed. Plaintiff also advised Selsky that he was going to commence an Article 78 proceeding over these matters, which he did in Orleans County Supreme Court in June 2003. Selsky states that "[a]fter the Article 78 proceeding had been filed, [he] took a further look at the hearing record and issued an administrative reversal of the tier III hearing, ... in which [Selsky] determined that reversal of the tier III hearing was warranted in light of the 'inconsistent testimony at the hearing concerning test procedures' that were not resolved to [his] satisfaction." Selsky Decl. (Dkt. #41) ¶ 14. Selsky directed that "records containing references to [plaintiff's] hearing are to be expunged." Selsky Decl. Ex. FF.

Selsky's decision reversing the determination of guilt was issued on August 13, 2003. Plaintiff alleges that at that point, he had been confined to SHU since February 4, 2003, and was released on August 18, 2003, for a total of 195 days' confinement in SHU as a result of the determination of guilt on the drug charge.

Plaintiff filed the complaint in this action on October 16, 2003. He alleges that he was denied his rights to due process and to equal protection in a number of ways in connection with the disciplinary hearing, and that one defendant, Barbara Gautieri, retaliated against him for having exercised his right to petition the government for redress, in violation of his rights under the First Amendment to the United States Constitution. In addition to Gautieri, plaintiff has sued Hearing Officer Howell, Director Selsky, Orleans Superintendent John Beaver, and DOCS Commissioner Glenn Goord.[1]

## DISCUSSION

**I. Due Process Claims**

Plaintiff alleges that he was denied procedural due process during the disciplinary proceedings, for a host of reasons. Analysis of these claims "proceeds with two questions. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (quoting *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Prison discipline implicates a liberty

---

[1] Plaintiff's claims against three other defendants were dismissed by this Court on February 5, 2004 (Dkt. #7).

interest when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The duration of SHU confinement is a relevant, but not the only, factor with respect to whether such confinement is "atypical." *Ortiz v. McBride*, 380 F.3d 649, 654-55 (2d Cir. 2004); *see also Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004) ("we have explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights") (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). Here, plaintiff's 195-day confinement falls within what the Second Circuit has described as an "intermediate" range, *Palmer*, 364 F.3d at 65, which ordinarily would require "'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Id.* In the case at bar, however, plaintiff has alleged that his conditions of confinement were harsher in a number of respects from other inmates' within SHU, and at least for purposes of their summary judgment motion, defendants do not appear to dispute those allegations, nor do they appear to dispute that plaintiff had a protected liberty interest in not being confined to SHU. Accordingly, the Court will proceed to consider whether plaintiff received the process that was due him.

In general, "due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed *ex parte* by the hearing officer, and a statement of reasons for the discipline imposed." *United States v. Abuhamra*, 389 F.3d 309, 326 (2d Cir. 2004) (citing *Sira v. Morton*, 380 F.3d 57, 70, 74-76 (2d Cir. 2004)). The Court of Appeals for the Second Circuit has described these

requirements as "minimal." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Here, plaintiff has set forth a laundry list of alleged procedural defects at the disciplinary hearing, including lack of legal assistance, insufficiency of the evidence, denial and exclusion of certain evidence and witnesses, hearing officer bias, and failure to follow certain DOCS regulations. Plaintiff also alleges that the urine sample that he provided had been adulterated and was unreliable.

Having reviewed the evidence in the light most favorable to plaintiff, I conclude that, even drawing all reasonable inferences in his favor, plaintiff has not shown the existence of any genuine issue of material fact as to these allegations, and that defendants are entitled to summary judgment. First, as to plaintiff's right to assistance, the Second Circuit has "note[d] that an inmate's right to assistance is limited." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). For example, there may be "circumstances [in which] an inmate will be unable to marshal evidence and present a defense without some assistance," such as where the inmate is "illiterate, confined to an SHU, or unable to grasp the complexity of the issues." *Id.*

Here, plaintiff was not confined to SHU until February 4, 2003, and he has not alleged any reasons why he was unable to present a defense to the misbehavior report, or any prejudice stemming from a lack of adequate assistance. Moreover, plaintiff was provided with an assistant, defendant Gautieri (a teacher at Orleans), and he expressly stated at the disciplinary hearing that he was satisfied with the assistance that he had received from her. Plaintiff told the hearing officer, "I was not dissatisfied with my assistance in any way," that he "did get the help [he] wanted," that he was "not dissatisfied with [Gautieri] and the assistance capability whatsoever," and that he was "not

dissatisfied with the assistance issue whatsoever." Dkt. #43 Ex. N at 3-4. The record also indicates that Gautieri did in fact provide plaintiff with substantial assistance, as reflected in Gautieri's contemporaneous records. *See* Gautieri Decl. (Dkt. #40), Exs. B and C. Plaintiff does allege some other problems that he had with Gautieri, which are discussed below, but there is no basis for his allegation that he was denied legal assistance.

As for the sufficiency of the evidence to support Howell's determination of plaintiff's guilt, the Second Circuit has stated that "[f]or a prison disciplinary proceeding to provide due process there must be, among other things, 'some evidence' to support the sanction imposed." *Ortiz*, 380 F.3d at 655 (citing *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001)). Accordingly, "judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Sira*, 380 F.3d at 69 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). *See also Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) ("some evidence" standard requires some "reliable evidence").

In this case, I find that Howell's determination of guilt, and the later administrative decisions upholding that determination, met this "some evidence" standard. First, although the determination was ultimately reversed by Selsky, that is not dispositive, since "New York law requires prison disciplinary rulings to be supported by 'sufficiently relevant and probative' information 'to constitute substantial evidence,'" which is a "sterner [requirement] than the 'some evidence' standard necessary to afford due process." *Sira*, 380 F.3d at 76 n. 9 (noting that "Director Selsky's reversal of Sira's

Case 6:03-cv-06507-DGL-JWF   Document 56   Filed 09/20/05   Page 7 of 17

disciplinary ruling therefore does not automatically establish Sira's federal claim") (quoting *Foster v. Coughlin*, 76 N.Y.2d 964, 966 (1990)).

In his determination of guilt, Howell stated that he relied on "the misbehavior report, the urinalysis test, [and] the testimony of Officers Bennett, Kurke, Penko and Lt. Brown." Dkt. #41 Ex. E. Howell also recited the substance of the testimony of some of the witnesses, to the effect that plaintiff had been given a "clean, freshly packaged sample jar," and that when Officer Bennett asked plaintiff what the powdery substance was in the urine, plaintiff responded, "I don't know, I must of pissed it out." *Id.* Howell "conclude[d] that [the] first urine sample was not contaminated by a foreign substance" and that "a second sample was not necessary." *Id.*

This certainly meets the "some evidence" standard. While it is not clear what "inconsistent testimony" Selsky was referring to in his decision reversing the determination of guilt, the Supreme Court has stated that "[a]scertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [hearing officer]." *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985). I find that the evidence relied upon by Howell did support his finding that plaintiff had used drugs in violation of DOCS rules. I likewise find that Selsky's initial affirmance of Howell's decision was supported by at least a "modicum of evidence," *id.* at 455, and that therefore no due process violation occurred. *See Rivera v. Wohlrab*, 232 F.Supp.2d 117, 124 (S.D.N.Y. 2002) (alleged improprieties in urinalysis procedure

- 7 -

and documentation did not render the results of inmate's drug test impermissible at his disciplinary hearing, since hearing officer was entitled to conclude that test results were valid).

Plaintiff also contends that the procedures that were followed in testing and preserving his urine sample did not comport with DOCS regulations concerning inmate drug tests. Even if that were so, however, that would not give rise to a due process claim. "[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution ... ." *Shakur*, 391 F.3d at 119. "[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). Likewise, plaintiff's contention that he should have been allowed to provide a second urine sample on January 20, 2003, does not support his due process claim. *See Swint v. Vaughn*, No. CIV. A. 94-3351, 1995 WL 366056, at *6 (E.D.Pa. June 19, 1995) ("An inmate has no due process right to submit a second sample for drug testing") (citing *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993), *cert. denied*, 513 U.S. 829 100 (1994)), *aff'd*, 72 F.3d 124 (3d Cir. 1995).

Plaintiff next asserts that Howell violated plaintiff's due process rights by refusing to call a facility doctor or an employee of the Syva company, which makes the drug-testing equipment used in plaintiff's urinalysis. This also fails to make out a due process claim.

Although a New York inmate has a due process right to call witnesses, *see* N.Y.C.R.R. § 254.5(b), this right is not absolute. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff*, 418 U.S. at 566 (1974). A prisoner's right to call witnesses is available only "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Prison officials must be accorded the discretion necessary to keep a hearing within reasonable limits

and to refuse to call witnesses when summoning them may create a risk of reprisal or undermine authority. *Id.* A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable"). In addition, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify ... ." *Ponte*, 471 U.S. at 497. They need not give a detailed explanation, however, and "may do so ... by making the explanation a part of the 'administrative record' in the disciplinary proceeding ... ." *Id.*

Here, plaintiff stated during the course of the hearing,

> I want to call the SYVA company OK, it's my right to do that, and they're the people that manufactured this machine. And I would like to ask one of their people is there anything that is their reason for not being able to test the sample that has something inside. Because will it alter the test reading, could it possibly alter the test reading. So I would like to say on record that I would like to call SYVA company and in this room also.

Dkt. #43 Ex. N at 31.

Howell deferred deciding plaintiff's request until after hearing the testimony of Officer Kurek, who had conducted the urinalysis. After Kurek testified, Howell stated that he was denying plaintiff's request to call a representative from Syva on the ground that "Officer Kurek, the certified Officer sufficiently addressed the substance in the urine sample as well as the test procedure. Contact with SYVA company is unwarranted." *Id.* at 50. I find that Howell's stated reasons for refusing to call a witness from Syva were sufficient and that his refusal did not violate plaintiff's due process rights. *See Carlisle v. Snyder*, No. 02-CV-6662, 2004 WL 1588209, at *6 (W.D.N.Y. July

14, 2004) ("The Court concludes that the refusal to call a representative from Syva as plaintiff's witness does not meet the standard for a due process violation under the Fourteenth Amendment").

As for Howell's alleged refusal to call a facility physician, the record does not even show that plaintiff expressly made such a request, or that he objected to the alleged denial. At one point in the hearing, plaintiff began arguing that the urine sample that he gave must have been adulterated. When plaintiff rhetorically asked "where did [the powdery substance] come from," the following colloquy ensued:

> Howell: [The officer who took the sample] said ... you have urinated it out. So it could have come from there.
>
> Alicea: Ok, then we can call a Doctor and see if I can urinate powder.
>
> Howell: It wasn't a powder, it was a crystalllized substance, and people do that. They're taking ... Let's not go off on that tangent. What we need to do it [sic] get other witnesses in here. OK?
>
> Alicea: OK
>
> Howell: Anything else you'd like to say?
>
> Alicea: No, not right now.

Dkt. #43, Ex. N at 22-23. At the end of the hearing, plaintiff also stated that he had no further witnesses. *Id.* at 49.

Plaintiff, then, never clearly requested that a physician be called as a witness, nor did he object when Howell indicated that he did not intend to "go off on that tangent." Furthermore, Officer Kurek, who conducted the urinalysis, had testified that he sometimes received urine samples that were cloudy, and that the substances causing the cloudiness would generally settle out after sitting for a while. *Id.* at 34-35. In light of that testimony, as well as the evidence that the sample

- 10 -

bottle had been clean and sealed prior to plaintiff providing the urine sample, Howell was justified in not seizing upon plaintiff's offhand reference to "call[ing] a doctor" and summoning a physician to testify, particularly since plaintiff had not previously indicated any desire to call a physician witness. *See Sweeney v. Parke*, 113 F.3d 716, 720 (7th Cir. 1997) (noting various risks, such as delay and disruption of penal institution's disciplinary process, inherent in day-of-hearing witness requests by inmates, and concluding that "prison officials are justified in summarily denying such requests"), *overruled on other grounds by White v. Indiana Parole Bd.*, 266 F.3d 759 (7th Cir. 2001).

Plaintiff's claim that Howell was biased against him also lacks support in the record. It is true that "[a]n inmate subject to a disciplinary hearing is entitled to, *inter alia*, an impartial hearing officer." *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir. 1990); *see also Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard"). This claim is unsubstantiated, however. Plaintiff infers bias merely from the fact that Howell tended to credit the correction officers' testimony rather than plaintiff's. If that were enough, every inmate who is found guilty of a disciplinary infraction would be able to state a claim for bias. While it does appear that Howell had spoken to Gautieri concerning plaintiff's complaints about Gautieri prior to the hearing, there is no evidence that their conversation was in any way improper or that Howell became biased against plaintiff as a result. *See Campo v. Keane*, 913 F.Supp. 814, 825 (S.D.N.Y. 1996) ("There is no evidence in the record to support any inference that [the hearing officer's] factual findings were biased or that defendant had prejudged the case before it was heard").

Plaintiff's other allegations of due process violations are also meritless and warrant scant comment. He claims that certain information, such as a so-called "urine destruction log," or the names of other correction officers who were not involved in collecting or testing his urine sample, was not provided to him prior to the hearing, and that the DOCS witnesses failed to establish an adequate chain of custody for admission of the urinalysis results. As stated, I find that Howell was entitled to find, on the evidence before him, that the urinalysis results were reliable. With respect to plaintiff's allegation that he was not provided with various items of information which he had requested, those items, if they even existed, were either irrelevant or of so little importance that any prejudice to plaintiff was *de minimis* and did not give rise to a constitutional violation.[2]

## II. Equal Protection Claim

Plaintiff alleges that he was denied his right to equal protection because he was treated differently from similarly situated inmates, and that there was no rational basis for this difference in treatment. This "class of one" claim is meritless.

To state a valid equal protection "class of one" claim, a plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003). "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). "[T]he standard

---

[2] Howell contends that there is no such thing as a "urine destruction log." Howell Decl. (Dkt. #43) ¶ 13.

for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are '*prima facie* identical.'" *Id.* at 105 (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).

Here, plaintiff has not even identified any similarly situated inmates who were treated differently from him, much less shown an "extremely high" level of similarity between him and them. He simply alleges that the various due process violations he has alleged–such as the refusal to call witnesses, the lack of legal assistance, etc.–were not inflicted on other inmates. He provides no evidence for that assertion, and in any event the Court has already determined that none of those matters violated plaintiff's rights in the first place. Plaintiff's attempt to shoehorn his due process claim into an equal protection claim must fail.

**III. Retaliation Claim**

Plaintiff alleges that defendant Gautieri retaliated against him for having exercised his rights under the First Amendment. Specifically, plaintiff alleges that on January 22, 2003, he filed a grievance against Gautieri, complaining that she was not providing him with adequate assistance in the disciplinary proceeding against plaintiff. He alleges that on January 24, Gautieri summoned plaintiff to her office, where she told plaintiff that Howell had shown her a copy of plaintiff's grievance against her. Plaintiff alleges that Gautieri told him that there were "no secrets in prison," that plaintiff "should be more careful as to what he writes and who he writes it about," and that plaintiff would "have to pay the consequences for writing that letter to the superintendent." Complaint ¶ 39.

Plaintiff alleges that by "verbally attacking" him in this manner, Complaint ¶ 38, Gautieri retaliated against plaintiff for having exercised his First Amendment right to seek redress of grievances from the government. Plaintiff also alleges that Gautieri attempted to influence Howell to find plaintiff guilty, also out of retaliatory motives. Gautieri admits that Howell did show her plaintiff's grievance, and that she spoke about it with Howell as well as with plaintiff, but she denies making any threats against plaintiff or attempting to influence Howell's decision.

In order to establish a First Amendment retaliation claim, a plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Courts approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

Since the filing of prison grievances is a constitutionally protected activity, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988), plaintiff meets the first prong of the test. The question, then, is whether he has adduced sufficient evidence to give rise to an issue of fact as to the adverse-action and causal-connection prongs of the test set forth in *Dawes*.

As to the meeting between Howell and Gautieri, I find the evidence insufficient to support plaintiff's allegations, and that Gautieri is entitled to summary judgment. The only evidence relied upon by plaintiff are the facts that Howell and Gautieri spoke about plaintiff's grievance against Gautieri, and that Howell subsequently found plaintiff guilty of the drug charge against him. To

infer that Gautieri prejudiced Howell against plaintiff, however, or that there was a causal connection between her conversation with Howell and his finding of plaintiff's guilt, is based on sheer speculation.

I see nothing improper about Howell's informing Gautieri of plaintiff's grievance against her, or with their discussing the substance of the grievance. If an inmate complains that he is not receiving adequate assistance concerning an upcoming disciplinary hearing against him, it is in the inmate's best interests to have the matter addressed before the hearing, to ensure that the proceedings are fair.

I also see no evidence that Gautieri attempted to, or did, influence Howell to find plaintiff guilty of the drug charge. To infer otherwise, a factfinder would have to rely on pure speculation. Howell stated his reasons for his finding on the record, and that finding was, as stated earlier, supported by evidence presented at the hearing. There is simply no evidence that his conversation with Gautieri had anything to do with the determination of guilt. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (to survive well-founded motion for summary judgment, non-moving party must come forward with "concrete evidence from which a reasonable juror could return a verdict in his favor").

I likewise find that Gautieri's alleged statements to plaintiff about there being "no secrets in prison" and that plaintiff would "have to pay the consequences" for filing a grievance against Gautieri do not give rise to a First Amendment retaliation claim. Courts have found that prison officials' conduct constitutes an "adverse action" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 493. The alleged retaliation must be more than *de minimis* for it to be actionable. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). In addition, the fact that a threat was never carried out, while not

necessarily dispositive, is a factor weighing against a finding of adverse action. *See*, *e.g.*, *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268-69 (10th Cir. 2005); *Newby v. Whitman*, 340 F.Supp.2d 637, 663 (M.D.N.C. 2004).

Here, even if Gautieri did make the statements alleged by plaintiff, I do not believe that any rational factfinder could conclude that her actions would have "deter[red] a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." There is no indication that she ever made good on her unspecified threat, nor was she, as a teacher and inmate assistant, in a position to take any real action against plaintiff. *Cf. Lashley v. Wakefield*, 367 F.Supp.2d 461, 467 (W.D.N.Y. 2005) (material issues of fact existed concerning inmate's retaliation claims against guards who were alleged to have repeatedly filed false disciplinary charges against plaintiff, resulting in keeplock confinement and loss of privileges). Her alleged statements to plaintiff on this one occasion, then, even if made for retaliatory motives, were no more than a *de minimis* act that does not give rise to a constitutional claim.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #37) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 20, 2005.